# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE KELLY,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 13cv1997 BTM(BLM)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, VACATING ALJ'S DECISION, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART**, and Defendant's motion is **DENIED**. The ALJ's decision is **VACATED** and this case is **REMANDED** for further proceedings.

## I. PROCEDURAL BACKGROUND

On February 5, 2010, Plaintiff Janelle Kelly filed an application for supplemental security income benefits, alleging disability beginning February 7, 2007. The claim was denied initially on April 8, 2010, and upon reconsideration on August 28, 2010. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 25, 2011, ALJ Edward Steinman

held a hearing. At the hearing, Plaintiff amended her alleged disability onset date to February 5, 2010, her protective filing date. In a decision dated July 27, 2011, the ALJ found that Plaintiff was not disabled. (AR 31-40.) Plaintiff filed a request for review, which the Appeals Council denied. (AR 1-4.) In this action, Plaintiff seeks judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## II. ALJ'S FINDINGS AND CONCLUSIONS

The ALJ applied the five-step sequential analysis (20 C.F.R. § 416.920) to determine whether Plaintiff was disabled.[1]

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 2010, the application date.

The ALJ found that Plaintiff has the following severe impairments: a depressive disorder and a generalized anxiety disorder.

The ALJ concluded that Plaintiff's impairment or combination of impairments do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff has the residual functional capacity to perform medium work, as defined in 20 C.F.R. 416.967(c), except that she would be limited to simple, repetitive tasks with only occasional public contact.

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 416.920. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff is unable to perform any past relevant work, but that there are other jobs existing in significant numbers in the national economy that Plaintiff is able to perform. According to the VE, Plaintiff would be capable of performing 60% of the 2,300 different medium and light job titles available. Examples of such jobs include Garment Folder (DOT # 789.687-066), Bagger (DOT # 920.687-018), and Final Assembler (DOT # 806.684-010).

Accordingly, the ALJ concluded that Plaintiff has not been under a "disability" as defined in the Social Security Act, since February 5, 2010.

## III. STANDARD OF REVIEW

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). If the evidence can reasonably support either affirmance or reversal, a court may not substitute its judgment for that of the Commissioner. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## IV. DISCUSSION

Plaintiff contends that the ALJ's decision was erroneous because (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Bunner; and (2) the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony regarding her symptoms and limitations; and (3) the ALJ failed to provide clear and convincing reasons for rejecting the third-party

statement of her son.

As discussed below, the Court finds that this case should be remanded because there is a reasonable probability that new evidence submitted by Plaintiff to the Appeals Council, when considered together with medical records that the ALJ seems to have overlooked, would change the outcome of the case.

### 1. Dr. Bunner's Opinions Considered by the ALJ

Scott Bunner, M.D., a psychiatrist at North Center Mental Health Clinic, began treating Plaintiff on August 27, 2009, and continued to see her throughout 2010 and 2011.

The ALJ addressed two opinions by Dr. Bunner that were before him. The first opinion was an undated questionnaire in which Dr. Bunner described Plaintiff as having a "depressed mood, anxiety." (AR 309.) Dr. Bunner noted that Plaintiff could take care of her activities of daily living. (AR 311.) Dr. Bunner remarked that Plaintiff has "fair concentration and memory" but also stated that Plaintiff has "difficulty with concentration." (AR 310, 312.) He opined that Plaintiff's depression and anxiety "make it hard to work." (AR 312.)

Dr. Bunner's second opinion was a letter dated July 18, 2011, in which Dr. Bunner stated, "It is my medical opinion that the above-mentioned patient is currently disabled and is expected to be disabled for the next 12 months." (AR 457.)

### 2. New Opinions by Dr. Bunner Submitted to Appeals Council

Plaintiff submitted to the Appeals Council additional records from Dr. Bunner.

In medical source statements dated December 18, 2011 and December 21, 2011, Dr. Bunner indicated that Plaintiff had "marked" limitations in her

ability to carry out short, simple instructions; understand, remember, and carry out detailed instructions; the ability to make judgments on simple work-related decisions; and the ability to make judgments on complex work-related decisions. (AR 460, 463.) He also indicated that Plaintiff had "extreme" restrictions with respect to maintaining attendance and punctuality during a workday and workweek; performing at a consistent pace without more than regular breaks in a workday; and sustaining an ordinary routine without special supervision. (AR 461.) He noted that Plaintiff had "marked" restrictions with respect to interacting appropriately with the public, supervisors, and co-workers. (AR 461, 464.) He explained that Plaintiff "is very depressed and anxious and isolates at home and would never be able to show up for a job on any regular schedule." (AR 461.) He also opined that Plaintiff was "permanently disabled" and "not able to hold a job of any kind." (Id.)

In a mental evaluation form dated December 21, 2011, Dr. Bunner described Plaintiff as "poorly groomed" with "slow tearful speech." (AR 466.) He noted that she "does little" and "sees few people." (AR 468.) He also noted that she has "poor concentration and initiative." (Id.) He opined that she "will likely not improve" and "is unable to work in any capacity." (AR 468-69.)

### 3. Significance of the New Evidence

The ALJ explained that the undated questionnaire was not consistent with Dr. Bunner's treatment notes of Plaintiff, in which Plaintiff was observed to have a normal intellect, coherent thought process, normal memory, adequate insight and normal judgment. The ALJ noted that the medical record included Dr. Bunner's progress notes from "January 4, 2010 through September 28, 2010." (AR 35.)

As for the July 18, 2011, letter, the ALJ explained that Dr. Bunner's opinion regarding Plaintiff's disability was reserved to the Commissioner.

The Court agrees that the undated questionnaire's remarks regarding Plaintiff's "difficulty with concentration" and her depression and anxiety making it "hard" for her to work, do not seem consistent with progress notes from January 4, 2010 through September 28, 2010. (AR 262-269; 335-346;430-433.) In these progress notes, Dr. Bunner described Plaintiff's memory as "normal" and did not note any concentration problems. With the exception of his April 2, 2010 progress note, Dr. Bunner also rated Plaintiff's symptoms of depression, anxiety, level of interest, and other negative symptoms as mild (a "2" or "3" on a scale of 1-10). During most of these visits, Dr. Bunner assigned Plaintiff a GAF score of 55.

The Court also agrees that the July 18, 2011 letter is conclusory and does not appear to be supported by the progress notes from January 4, 2010 through September 28, 2010.

However, the medical record before the ALJ also included Dr. Bunner's progress notes from February 28, 2011 through June 3, 2011. (AR 419-428.) The ALJ did not make any mention of these progress notes. These notes suggest a worsening of Plaintiff's condition. On February 28, 2011, Dr. Bunner rated Plaintiff's depression, energy level, insomnia, anxiety, negative symptoms, and level of interest as a "7" ("5" being "medium" and "10" being "extreme"). Dr. Bunner noted that Plaintiff had "inability to concentrate" and was "unmotivated." (AR 428.) He gave her a GAF score of 45.

On Plaintiff's subsequent visits to Dr. Bunner on April 5, 2011, May 5, 2011, and June 3, 2011, Dr. Bunner rated Plaintiff's symptoms in the "4" range, but continued to observe inability to concentrate and lack of motivation. (AR 419- 425.) Plaintiff's GAF score remained a 45. The Appeals Council received an additional progress note from Dr. Bunner dated July1, 2011. (AR 470.) In this note, Plaintiff's symptoms were rated a "3," but Dr. Bunner continued to observe inability to concentrate and lack of motivation.

In the medical evaluations that were submitted to the Appeals Council, Dr. Bunner noted Plaintiff's poor concentration and initiative and opined that Plaintiff would have marked difficulty in carrying out and remembering instructions and making judgments on work-related decisions. He also opined that Plaintiff would have extreme difficulty maintaining attendance and punctuality and performing at a consistent pace. He observed that Plaintiff was isolating herself and would have marked limitations interacting with others.

The new medical evidence, when viewed together with the 2011 progress notes and the other medical opinions before the ALJ, may support a finding that Plaintiff's condition worsened sometime after September 28, 2010. Remand is appropriate when there is a reasonable possibility that new evidence submitted before the Appeals Council would have changed the ALJ's decision. Olley v. Astrue, 2001 WL 1790095 (C.D. Cal. May 10, 2001); Borrelli v. Comm'r of Soc. Sec., __ Fed. Appx. __, 2014 WL 1492736 (9th Cir. April 17, 2014). The ALJ should be give the opportunity to consider the new evidence and determine whether Plaintiff is entitled to benefits. As explained in Harman v. Apfel, 211 F.3d 1172 (9th Cir. 2000):

> While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law. The appropriate remedy in this situation is to remand this case to the ALJ; the ALJ may then consider, the Commissioner then may seek to rebut and the VE then may answer questions with respect to the additional evidence.

Id. at 1180.

The Court finds that there is a reasonable possibility that the new evidence submitted before the Appeals Council might change the outcome of Plaintiff's case. There is a reasonable possibility that the new evidence supports a finding of a decline in Plaintiff's condition and a disability onset date that is later than the date Plaintiff claimed.

## V. <u>CONCLUSION</u>

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's motion for summary judgment and **DENIES** Defendant's cross-motion for summary judgment. The Court **VACATES** the decision of the Social Security Administration and **REMANDS** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: September 27, 2014

*/s/ Barry Ted Moskowitz*
BARRY TED MOSKOWITZ, Chief Judge
United States District Court